SHARP, Judge,
concurring in part and dissenting in part.
I agree with the majority’s affirmance of the judgment in favor of the six (6) original lot owners. However, I disagree with their reversal of the judgment in favor of the twenty-eight (28) subsequent lot owners.
A general building scheme exists where a tract of land is divided into lots to be sold and uniform restrictions are imposed on the lots. Hagan v. Sabal Palms Inc., 186 So.2d 302 (Fla. 2d DCA), cert. denied, 192 So.2d 489 (Fla.1966). Carrigan & Boland, Inc. initially advertised that all residents of the subdivision Riverside Landing would have access to the Indian River and the inter-coastal waterway. The restrictive covenants, before amendment, provided that lot 35, the one riverfront lot, would be owned by all of the residents of the subdivision. Thus a general plan existed for a residential development with access to the river and intercoastal waterway.
A grantor may reserve the right to alter or amend restrictive covenants. Flamingo. Ranch Estates, Inc. v. Sunshine Ranches Homeowners, Inc., 303 So.2d 665 (Fla. 4th DCA 1974). However, this power to amend is only valid as long as it is exercised in a *518 reasonable manner and does not destroy the general scheme. Id. Carrigan & Boland’s amendment deleting the reservation of lot 35 to the subdivision owners completely destroyed the general scheme. Lot 35 has now become, by virtue of the amendment and the majority opinion, partially owned by the six (6) original lot owners and the developer, who no longer owns any lots. The provisions for payment of taxes and maintenance no longer are equitable or practical. Why should the developer pay any portion of the taxes and maintenance on lot 35, much less ^/foths of them?
I would affirm the lower court’s judgment in favor of the twenty-eight (28) subsequent lot owners because the reservations clause was not exercised in a reasonable manner and the amendment is not valid.